IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

David A. Aronson,

Plaintiff,

v.

Michael J. Astrue,
Commissioner of Social Security,[1]

Defendant.

NO. CV05-481-TUC-FRZ (JM)

REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff David A. Aronson seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying him benefits. This Social Security Appeal has been referred to the United States Magistrate Judge pursuant to Local Rule – Civil 72.2(a)(10) of the Rules of Practice of this Court. Based on the pleadings of the parties and the record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, deny Plaintiff's Motion for Summary Judgment [Doc. No. 14] and Defendant's Cross-Motion for Summary Judgment [Doc. No. 17] and grant Defendant's Motion for Remand [Doc. Nos. 26 & 30].

**I. Procedural Background**

Aronson applied for Disability Insurance Benefits on October 14, 1999, claiming

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as the defendant in this action.

disability with an onset date of March 19, 1998, due to left knee and hip pain. (Tr. 107 & 113). The application was denied initially and upon reconsideration. (Tr. 98-101). Aronson then requested a hearing before an ALJ. (Tr. 47-88). The hearing was held on January 2, 2001, and his claims were denied by the ALJ in a decision dated April 11, 2001. (Tr. 33-39). Aronson requested review of the hearing decision by the Appeals Council. (Tr. 28). The decision became the final decision of the Commissioner when the Appeals Council did not grant Aronson's request for review. (Tr. 4-5). Aronson then commenced an action for judicial review pursuant to 42 U.S.C. § 405(g). Upon stipulation of the parties, the Court remanded the case to the Commissioner for further administrative proceedings. (Tr. 491-493).

A supplemental hearing was conducted on November 16, 2004. (Tr. 423-464). By letter dated November 3, 2004, Aronson amended his application to reflect a claim for a closed period of disability with an alleged disability onset date of March 19, 1998, and an alleged date of cessation of March 1, 2001. (Tr. 500-501). In a decision dated January 27, 2005, the ALJ again found that Plaintiff was not disabled. (Tr. 398). The second decision became the final decision of the Commissioner when the Appeals Council did not grant Aronson's request for review. (Tr. 376-379).

Aronson subsequently filed his complaint in this case on August 3, 2005, seeking judicial review of the ALJ's decision. In his motion for summary judgment, Aronson asserts that the ALJ applied the wrong standard of proof in deciding the claim, that the ALJ did not comply with SSR 00-4p by failing explore the vocational expert's testimony regarding the *Dictionary of Occupational Titles*, and the ALJ errored in finding that Aronson had transferable skills. In terms of relief, Aronson seeks an order awarding benefits or, alternatively, remand for further proceedings.

In her response and cross-motion, the Commissioner argues that the ALJ applied the proper standard of proof, that substantial evidence supported the ALJ's finding that Aronson could perform numerous jobs available in the national economy, and that Aronson's

remaining arguments lacked merit. However, shortly after filing the response and cross-motion, the Commissioner filed a Motion for Remand indicating that, upon further review of the case, remand is appropriate "for clarification of the standard of review applied by the ALJ." The Commissioner also agreed that the ALJ could have further developed the VE's testimony and to determine if the ALJ "properly considered [Aronson's] nonexertional limitations when determining that [Aronson] could perform his past relevant work." *Motion for Remand*, pp. 4-5. In response to the Motion for Remand, Aronson asserts that he "was clearly disabled on the existing record," but, should remand be ordered, the ALJ should be instructed to address all of the issues he raised in his Motion for Summary Judgment. Resolution of this case therefore requires a review of each of Aronson's individual claims to determine if an award of benefits is appropriate or if the matter should be remanded.

## II. Record on Appeal

### A. Aronson's Testimony

At the November 16, 2004, hearing, Aronson reported that he was born on December 17, 1954, was a high school graduate, and that he had formerly lived in San Manuel, Arizona, but had moved to Tucson. (Tr. 518-19 & 525). He had worked for approximately 20 years in the mines doing heavy repair work using shovels, picks, axes, bars and pneumatic equipment. (Tr. 521 & 523). This job required him to lift timber posts and steel H-beams weighing in excess of 100 pounds. (Tr. 525).

He had undergone the first of three knee surgeries in March 1998 after injuring his knee while working at the mine. (Tr. 519 & 524). After the surgery, he was out of work for a short time and then went back to work from June through October 1998. (Tr. 520). He was also was experiencing hearing problems with his right ear and vision problems with his right eye. (Tr. 526). While back at work, Aronson was placed on light duty which included logging data on a computer. (Tr. 527). Aronson explained that he had difficulty doing this work because he would "lose his position where [he] was reading, and it would become real difficult, because [he could not] focus on one spot very long, it kind of gets blurred up." (Tr.

527). During that time his knee was unstable until his second operation in October 1998. (Tr. 525).

After the second operation, Aronson had a problem with infection and was non-weight bearing for "quite a length of time." (Tr. 527). After undergoing physical therapy, he again returned to light duty work at the mine in December of 1998. (Tr. 527). However, he continued to have problems with the knee and was out of work again for a third surgery in April 1999. (Tr. 527-28).

For eight months, from approximately June 2000 through February or March 2001, Aronson participated in a state sponsored heating, ventilation and air conditioning training program. (Tr. 525-26). Aronson drove two hours each way to and from school and attended class for approximately five hours per day. (Tr. 537).

In March 2001, Aronson worked for Androse Refrigeration for approximately three weeks, but was terminated because he had difficulty reading maps to work locations. (Tr. 522). At the time of the hearing, he was employed as a maintenance supervisor. (Tr. 522). The job involved checking the boiler and building temperatures and required very little heavy lifting. (*Id.*).

### B. Vocational Expert Testimony

Upon questioning by the ALJ, Vocational Expert Ruth Van Fleet opined that Aronson had some basic computer skills and clerical experience which were transferable to a sedentary range of work. (Tr. 538). She then stated that with these skills, and based on Aronson's age and limitations, he could work in semi-skilled positions as an information clerk or a telephone solicitor, or in an unskilled position as a surveillance system monitor. (Tr. 539-540).

Aronson's counsel then posed a hypothetical to the VE adding additional limitations and asking her to "assume that the doctor indicated that he could work four hours a day, four days a week," and that "he might miss an average of five workdays per month." (Tr. 541). The VE testified that these additional limitations "would eliminate all jobs on a full-time

basis, because you said four hours a day, four days a week. And also if he did get a job with five days a month absenteeism, he wouldn't be able to maintain a job on a long-term basis." (*Id.*)

**III. ALJ's Decision**

In the decision dated January 27, 2005, the ALJ found that the record established that, between March 19, 1998 and March 1, 2001, Aronson's medically determinable impairments included "status post three knee surgeries with residual scar contracture over the anterior aspect of the left knee, underlying chondromalacia and inferior pole patellar spur, 20/400 right eye visual acuity due to lens amblyopia, and partial left ear hearing loss." (Tr. 391). However, the ALJ found that Aronson "was not subject to ineffective ambulation . . . for a period of 12 continuous months or more." (Tr. 391).

Turning to Aronson's residual functional capacity, the ALJ determined that, "[a]lthough restrictions were replaced on the claimant's functional ability which precluded him from performing his past work(miner), multiple treating and examining physicians did not rule out the claimant's ability to perform at least sedentary work activity." (Tr. 394). The ALJ proceeded to conclude that "there is substantial evidence in the record to support a finding that the claimant remained capable of sedentary-level functioning on a sustained basis with an allowance for a sit-stand option." (Tr. 395). The ALJ accepted the VE's testimony regarding the work Aronson could perform (Information Clerk, Telephone Solicitor and Surveillance System Monitor) and concluded that these jobs existed in significant numbers. (Tr. 397).

Based on the foregoing analysis, the ALJ found that,

> [f]rom March 19, 1998 to March 1, 2001, [Aronson] retained the residual functional capacity to perform sedentary-level activity on a sustained basis with an allowance for a sit-stand option, good vision in only one eye and partial deafness in one ear (which does not interfere with normal conversation, but limits his ability to utilized the telephone using the left ear).

(Tr. 398). Thus, although Aronson was determined to be unable to perform his past relevant work, the ALJ found that he was able to perform a significant number of jobs in the national economy and, therefore he was not disabled under the Social Security Act.

**IV. Discussion**

**A. DOT and SSR 00-4p**

Once it is determined that a claimant cannot perform his past relevant work, the burden shifts to the Commissioner to show that the claimant has skills that are transferable to other jobs in the national economy. *Beecher v. Heckler*, 756 F.2d 693, 695 (9th Cir. 1985). Aronson asserts that, because SSR 00-4p was ignored, the ALJ did not satisfy this burden. SSR 00-4p provides that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy. In Aronson's case, the ALJ presented the following hypothetical to the VE:

> I'd like you to assume an individual of the claimant's education and work background, and age being 43 years, not his present age. And assume that the individual is limited to performing sedentary work, requires a sit/stand option. And the individual has vision in only – has good vision in only one eye. And has partial deafness in one ear. With those limitations, could – are there any jobs that exist in substantial numbers that that individual could perform?

(Tr. 538-39). In response to the hypothetical, the vocational expert identified three jobs that she believed Aronson could perform: information clerk, surveillance system monitor, and telephone solicitor. (Tr. 539-40). The problem, as Aronson points out, is that each of these jobs is described in the DOT as "sedentary" and do not, at least as categorized in the DOT, allow the sit/stand option as proposed in the hypothetical. Under SSR 00-4p, the ALJ was thus obligated to explore this inconsistency with the VE. *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995) (the DOT acts as a rebuttable presumption which can be rebutted by the testimony of a vocational expert).

In rebutting the presumption as to the classification of a job, the Commissioner "may take administrative notice of any reliable job information, including . . . the services of a

vocational expert." *Id.* at 1435 (citation and internal quotation marks omitted). If the testimony of the vocational expert contradicts the DOT, the ALJ may rely on that testimony, "but only insofar as the record contains persuasive evidence to support the deviation." *Id.* Here, the VE explained that, although the jobs are considered sedentary,

> it's my understanding from seeing those jobs performed, that you can stand as long as you stay in proximity to your, you know, to your work station.

(Tr. 540). Although it would have been helpful if this explanation of the deviation would have been further developed, it is sufficient to rebut the classification of the jobs identified by the VE and constitute "persuasive evidence" to support the deviation. While each of the identified jobs involves activities that are normally completed more comfortably while sitting, they are also readily performed standing. The Court will not second guess the ALJ's failure to more fully explore the basis for the VE's "understanding" of these jobs when the basis is patently obvious. The VE's testimony therefore constitutes persuasive evidence supporting the deviation.

**B. Transferable Skills**

Aronson asserts that substantial evidence does not support the ALJ's conclusion that he had transferrable skills to work in an unskilled job as a surveillance system monitor, or in the semi-skilled jobs of information clerk or telephone solicitor. Additionally, Aronson argues that even if he can work as an unskilled surveillance system monitor, such a job is not available in significant numbers in Arizona.

In his decision, the ALJ stated that "the vocational expert identified the following skills the claimant possesses from his past relevant work: basic computer skills (keyboarding, logging information), and clerking skills such as filing and telephone answering." (Tr. 396). Aronson contends it was improper for the VE to conclude that he had transferable skills based on his use of a computer in a "school" and his ability to play computer solitaire. In fairness to the ALJ, Aronson also testified that he spent a significant period of time after his

second surgery doing light duty work at the mine, which included performing clerical tasks and logging data on a computer. (Tr. 527 & 529). As Aronson testified, he worked in this position from December 1998 through April 1999. (Tr. 431, 442). However, a review of the record in its entirety establishes that Aronson's computer skills were rudimentary at best. He testified that he worked "one key at a time . . . ," and that he had never sent or received an e-mail. (Tr. 543-44). He described Google as "something playing on the computer." (Tr. 544). The ALJ neither provided this information in the hypothetical posed to the VE, nor discounted this testimony in his decision. That leaves the record in an incomplete state and renders it impossible to evaluate whether substantial evidence supported the ALJ's decision as it relates to the finding that Aronson had skills transferrable to the semi-skilled (information clerk and telephone solicitor) jobs identified by the VE.

That conclusion leaves open the possibility that Aronson could nevertheless perform the unskilled job of surveillance system monitor, as it does not require the skills of an information clerk or telephone solicitor. As such, if the job of surveillance system monitor is found to exist in significant numbers, Aronson will likely be considered not disabled. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983). The VE testified that there were 10,666 such jobs existing in the national economy and 182 in Arizona. (Tr. 539). Aronson argues that "such few jobs are not a significant number of jobs as a matter of law." *See* 42 U.S.C. § 423(d)(2)(A) (defining "work which exists in the national economy"). There is no clear authority or discreet number that the Court can use to determine if 182 jobs is a significant or insignificant number under the Social Security Act. A very similar issue was addressed in *Hancock v. Barnhart*, 153 Fed.Appx. 430 (9th Cir. 2005). In that case, faced with circumstances paralleling those in this case, the court noted that "the ALJ did not make a finding on whether the job of surveillance system monitor, taken alone, is 'work which exists in significant numbers' under 42 U.S.C. § 423(d)(2)(A)." Citing *INS v. Ventura*, 537 U.S. 12 (2002), the Court noted that this was an issue statutorily placed primarily in agency hands and, therefore, remanded to the ALJ to make this determination in the first instance. *Id.* at

17.

Following the lead of the Ninth Circuit in *Hancock*, the Court finds that the determination of this issue is better suited for the ALJ. The ALJ is better suited to address the credibility of Aronson's testimony regarding his computer and clerical skills. The ALJ will then, if necessary based on the credibility determination, offer a new hypothetical to the VE. In fact, coupled with the stipulated fact that the ALJ applied an erroneous "substantial evidence" standard to the decision as a whole, this case clearly warrants remand. *See Varney v. Secretary of Health and Human Services,* 859 F.2d 1396, 1401 (9th Cir. 1988) ("outstanding issues that must be resolved before a proper disability determination can be made.").

## V. Recommendation

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an Order **denying** Plaintiff's Motion for Summary Judgment [Doc. No. 14], **denying** Defendant's Cross-Motion for Summary Judgment [Doc. No. 17] and **granting** Defendant's Motion for Remand [Doc. Nos. 26 & 30].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 05-0481-TUC-FRZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 8th day of March, 2007.

Jacqueline Marshall
United States Magistrate Judge